THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EARL D. JONES, Defendant-Appellant.

(No. 71-47;

Fifth District—March 13, 1972.

Paul Bradley, of Defender Project, of Mount Vernon, and Richard J. Wilson, Senior Law Student, of Urbana, for appellant.

Roland W. Griffith, Jr., State's Attorney, of Edwardsville, for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a conviction of armed robbery in violation of Ill. Rev. Stat., ch. 38, par. 18—2, pursuant to jury verdict. Defendant raises the following issues on this appeal:

1. Was there sufficient credible evidence to prove defendant's guilt

beyond a reasonable doubt, particularly in light of the alibi evidence presented?

2. Whether the defendant was denied his right to a fair trial in that: (a) The trial court allowed hearsay, conclusionary and prejudicial testimony by five police officers on eight separate occasions. (b) The trial court admitted into evidence an unsigned waiver of constitutional rights form.

3. Whether the State, by passing police reports to counsel for the defendant in the presence of the jury committed prejudicial error.

On Saturday, October 3, 1970, at about 8:25 P.M., Mrs. Charlotte Cooper was on duty as an employee of the Melville Dairy Store in Godfrey, Illinois. At that time an individual entered the store and said "This is a stick up. Put all your money in a brown paper bag." She testified he had his left hand in his pocket and was carrying a gun in his right hand pointed at Mrs. Cooper. She opened the cash register and emptied it into a sack. She stated she was shaking and began crying during the incident. The assailant left and Mrs. Cooper called her employer. It was determined that $430.26 had been stolen.

The Sheriff's Department arrived and Mrs. Cooper described her assailant as about 25 to 30 years of age, height between 6'0" and 6'2", light complexioned, with freckles on his face, muscular build and short black hair. She stated he did not have a mustache. On October 7, 1970, Mrs. Cooper went to the Alton police station and there made an identi-kit description of the assailant.

Later that same day she was called back to the police station to view a lineup. There were four individuals in the lineup which she viewed through a one-way window. She also heard their voices. She identified the defendant in the line-up as her assailant. She subsequently made an in-court identification at trial.

Detective Galloway and Officer Logan testified that they arrested Jones on October 7 because of resemblance to the composite picture produced with the identi-kit. Officer Logan testified that he recited to the defendant his constitutional rights at the police station. A written form outlining and expressly waiving those rights was not signed by defendant and this fact was noted on the form by Officer Logan with the notation "refused to sign". The form was admitted into evidence as Exhibit 3 over objection of defense counsel.

Defendant Jones testified in his own behalf that at the time of the robbery he was at home prepairing to leave for dinner at a restaurant in St. Louis. He stated his wife awakened him about 8:30 P.M. and that they, plus a friend, Linda Motl, went out to dinner. In regard to a mustache, he stated he had always worn one and had shaved it only

once and that was on October 5, 1970, and this was done at his wife's request because she wanted to see how he looked without it. Defendant's wife and Miss Motl both corroborated defendant's testimony.

Also testifying was the manager of the restaurant, and his daughter who waited on defendant and his party. They both testified as to seeing defendant in the restaurant sometime after 8:00 P.M. and before 10:00 or 11:00 P.M. on the night of either October 2nd or October 3rd. The daughter remembered a joking conversation at the table as to whether defendant should shave his mustache. She did not remember seeing or not seeing a mustache on his face.

The other witnesses at the trial were police and sheriff's officers who were present either when defendant was advised of his rights or at the lineup. No statement or confession was made by defendant and none was sought to be introduced by the State.

■■ Turning to the issues presented on appeal, there was sufficient credible evidence upon which the jury could enter a verdict of guilty. We are not unmindful of the case of *People v. Reed* (1968), 103 Ill.App.2d 342, 243 N.E.2d 628, which states the general rule in this State:

"The rule is well established in Illinois that a conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful and uncertain. (*People v. Ikerd*, 26 Ill.2d 573, 579, 188 N.E.2d 12.) However, a single identifying witness has been held sufficient to sustain a conviction. *People v. Hunter*, 23 Ill.2d 177, 180, 177 N.E.2d 138."

■■ In the *Reed* case the identification rested solely upon the dark coat worn by the assailant and a gun he carried. In the case at bar the complaining witness made identification on color of hair, complexion, height, build and clothes. We feel this is sufficient in view of the fact she had excellent opportunity to view him during the robbery. The presence or non-presence of the mustache depends upon the jury's view of the credibility of the witnesses and the testimony of the Fergusons is consistent with the proposition that defendant may have had a mustache at the restaurant on Friday night, shaving it off before Saturday night and completing the robbery then. As was stated in *People v. Charleston* (1969), 115 Ill.App.2d 190, 253 N.E.2d 91, 94:

"Precise accuracy in describing facial characteristics is unnecessary where, as here, an identification is positive. The testimony of one witness alone, if positive and the witness credible, is sufficient to convict even though his testimony is contradicted by the accused. *People v. Miller* (1964), 30 Ill.2d 110, 113, 195 N.E.2d 694."

We find no error in this issue.

■■■ As to the hearsay evidence introduced by the State through the

law enforcement officers; all of the testimony related to the fact that Mrs. Cooper had identified Jones. It is clear that this testimony is inadmissible hearsay. (*People v. Lukoszus* (1909), 242 Ill. 101, 89 N.E. 749; *People v. Wright* (1965), 65 Ill.App.2d 23, 212 N.E.2d 126.) However, such evidence may be "harmless error" if no prejudice is shown. The prejudice alleged is, of course, that the evidence tends to corroborate a one-witness identification case. However, we follow the rule laid down in *People v. Wright* (1970), 124 Ill.App.2d 223, 260 N.E.2d 265, 270:

"On this point it has been said repeatedly that it is error to permit a police officer to testify to the statements made and the things done by a victim by way of identification of the Defendant. (*People v. Reeves* (1935), 360 Ill. 55, 64, 195 N.E. 443.) We note, also, that although courts of review have repeatedly condemned such evidence, the courts have labeled the testimony "harmless error" and "merely cumulative" if no prejudice to the defendant is shown. *This is especially so where the defendant makes no objection to the officer's testimony, as here.* (*People v. Campbell* (1969), 113 Ill.App.2d 242, 248, 252 N.E.2d 26.) We have examined the testimony in question and some of it is hearsay and improper. Although plain errors or defects affecting substantial rights may be noticed, notwithstanding they were not brought to the attention of the trial court, we find no substantial prejudice here. See *People v. Dial* (1968), 95 Ill.App.2d 345, 362, 238 N.E.2d 122." (Emphasis added.)

No objection was made by defendant at trial and it is not necessary that we determine whether the error affected defendant's substantial rights, since defendant is entitled to a new trial on other grounds.

■■■ The admission into evidence of the unsigned waiver of rights form is error in this case. First, it is wholly irrelevant and immaterial to any issue in the case. Secondly, the admission of such a document casts great suspicion in the jury's mind as to why the defendant refused to sign. The fact that the defendant refused to sign and any reasons he may have for so refusing is a subject for consideration and speculation only between the defendant and his conscience. It is none of the jury's business. This court in *People v. Harris* (1967), 83 Ill.App.2d 422, 228 N.E.2d 179 (Abstract only), reversed a conviction where evidence offered by a police officer that the defendant had remained mute when an effort was made to take a statement, was admitted. We said at that time in the full opinion:

"An accused is within his rights when he refuses to make a statement, and the fact that he exercised such right has no tendency to prove or disprove the charge against him, thus making evidence of his refusal neither material or relevant to the issue being tried."

We recognize the opinion in the cases of *People v. Gilyard,* 124 Ill.App. 2d 95, 260 N.E.2d 364, and *People v. Novak,* 84 Ill.App.2d 276, 228 N.E.2d 129, where the court held the introduction of oral testimony of failure to make a statement was held harmless error in view of the overwhelming evidence of guilt. We distinguish those cases in that here we have (1) a written waiver of rights form and (2) evidence of guilt which is sufficient, but not overwhelming. Therefore, we must reverse and remand this case on that ground.

■■■■ The last assignment of error we find of no merit because the passing of the police reports was unobjected to at trial. Defendant argues that he was constrained from objecting for fear of calling the matter more strongly to the attention of the jury. However, he could have called a sidebar conference and placed his objection before the court out of the hearing of the jury. This is not to say that we approve this procedure by State's Attorneys and if properly objected to at trial will constitute reversible error.

Reversed and remanded.

G. MORAN and CREBS, JJ., concur.